UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SEAN WAYNE NULL and ) | |
| ERKIOS SYSTEMS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 4:23-cv-00702-SRC |
| ENTREPRENEUR STARTUP ) | |
| BUSINESS DEVELOPMENT, d/b/a/ ) | |
| ARCH GRANTS, and ) | |
| GABE ANGIERI, ) | |
| ) | |
| Defendants. ) | |

**<u>Memorandum and Order</u>**

Plaintiffs Sean Wayne Null and Erkios Systems, Inc. have alleged, among other state-law claims, that Defendants Arch Grants and Gabe Angieri engaged in the kind of race-based discrimination prohibited by federal law. Doc. 1. Defendants move to dismiss the claims, protesting that this is no more than a "trumped-up" lawsuit pleading too few facts to show unlawful discrimination. Docs. 22, 23. The Court agrees that the Complaint falls short of the line between possibility and plausibility. Accordingly, the Court dismisses Count I for failure to state a claim upon which relief can be granted, then declines to exercise supplemental jurisdiction over Counts II and III, and denies Defendants' Motion as to Counts II and III as moot.

**I.   Background**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all well-pleaded factual allegations in the complaint. *Core*

*& Main, LP v. McCabe*, 62 F.4th 414, 419 (8th Cir. 2023). The Court summarizes Plaintiffs' allegations as follows.

Null is a resident of Missouri and the president, chief executive officer, and majority owner of Erkios Systems, a cybersecurity products company. Doc. 1 at ¶¶ 5, 7, 12. In August 2021, Erkios entered into a "Grant Agreement" with Entrepreneur Startup Business Development Corp., a not-for-profit organization operating under the name "Arch Grants" that aims to support start-up businesses. *Id.* at ¶¶ 13–14. Arch Grants had recently received a COVID-19-related loan from the federal Small Business Administration amounting to over $150,000. *Id.* at ¶ 11. The Grant Agreement promised Erkios "certain accommodations, privileges, financing, and grants" in exchange for, in part, the company's relocation to St. Louis, Missouri. *Id.* at ¶ 14–15. Arch Grants also "expressed a willingness to work with Erkios on flexible terms to meet the material requirements of the Agreement." *Id.* at ¶ 29. Shortly thereafter, Erkios relocated its headquarters and the substantial bulk of its operations to St. Louis, and "complied with such other material contractual commitments pursuant to the Agreement." *Id.* at ¶ 15.

Sometime later, Arch Grants hired Gabe Angieri as its new Executive Director. *Id.* at ¶ 16. Angieri soon "took a dislike" to Null—who is not white—and, Plaintiffs claim, "intentionally discriminated" against them "based on Null's race, color, and/or national origin" by "imposing onerous requirements and conditions on Plaintiffs that were not imposed on [other] similarly situated" businesses engaging with Arch Grants. *Id.* at ¶¶ 16, 18. Consequently, Null and Erkios "suffer[ed] damages and irreparable harm." *Id.* at ¶ 20. Angieri and Arch Grants also "took the position that there was no flexibility in the strict terms of the Agreement," terminated the Agreement, and demanded the return of what grant money Erkios had already received. *Id.* at ¶¶ 30, 31.

Null and Erkios filed this lawsuit alleging three counts:  violation of Title VI of the Civil Rights Act of 1964, as to both Arch Grants and Angieri, *id.* at ¶ 17; violation of the Missouri Human Rights Act (MHRA), as to both Arch Grants and Angieri, *id.* at ¶ 21–25; and breach of the implied covenant of good faith and fair dealing, as to Arch grants only, *id.* at ¶ 26–32.  Arch Grants and Angieri now move to dismiss all claims under Rule 12(b)(6), arguing that Angieri is not subject to individual liability under Title VI, that Plaintiffs do not plead sufficient facts to state a claim under any legal theory, and that Plaintiffs have not exhausted their administrative remedies as required under state law before bringing the MHRA claim.  *See* docs. 22, 23.

**II.     Legal standard**

Under Rule 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff.  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).

3

However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (internal quotation marks omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679.  Therefore, a court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*.  This "context-specific" task requires the court to "draw on its judicial experience and common sense." *Id*. at 679, 682.  In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567.  The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 682.  The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id.* at 679.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

4

possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

### III. Discussion

#### A. Count I: violation of Title VI

Plaintiffs allege that both Angieri and Arch Grants have violated Title VI of the Civil Rights Act of 1964. The Court addresses the claim with respect to each defendant in turn.

##### 1. Title VI as applied to Angieri

Title VI of the Civil Rights Act of 1964 prohibits race discrimination in any program that receives federal funds. "No person," it reads, "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  The plain text of the prohibition, in other words, applies only to "program[s] or activit[ies]"—not individuals.  In case there were any doubt regarding the precise reach of the phrase "program or activity," the statute itself provides an exhaustive, multi-part definition of the term, describing that Title VI applies to governmental entities, educational institutions, business organizations, and the like:

> For the purposes of this subchapter, the term "program or activity" and the term "program" mean all of the operations of—
>
> **(1)(A)** a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
> **(B)** the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;
>
> **(2)(A)** a college, university, or other postsecondary institution, or a public system of higher education; or
> **(B)** a local educational agency (as defined in section 7801 of Title 20), system of vocational education, or other school system;

5

>**(3)(A)** an entire corporation, partnership, or other private organization, or an entire sole proprietorship--
>**(i)** if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
>**(ii)** which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or
>**(B)** the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or
>
>**(4)** any other entity which is established by two or more of the entities described in paragraph (1), (2), or (3);
>
>any part of which is extended Federal financial assistance."

§ 2000d-4a.

That statutory definition lacks anything that might encompass a lone individual acting in his individual capacity. Perhaps for that reason, federal courts across the country have routinely held that individuals, including employees of entities subject to Title VI, cannot be held personally liable under Title VI. *See Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1047 (E.D. Mo. 2014) (collecting cases); *Buchanan v. City of Bolivar,* 99 F.3d 1352, 1356 (6th Cir. 1996) ("Plaintiff's claim also fails because she asserts her claim against [two individuals] and not against . . . the entity allegedly receiving the financial assistance"); *Shotz v. City of Plantation,* 344 F.3d 1161, 1170–71 (11th Cir. 2003) ("[T]he text of Title VI also precludes liability against those who do not receive federal funding, including individuals. . . . It is beyond question, therefore, that individuals are not liable under Title VI"); *Webb v. Swensen*, 663 F. App'x 609, 613 (10th Cir. 2016) ("Title VI forbids discrimination only by recipients of Federal funding; therefore, individual employees of such entities are not liable under Title VI"); *Rodgers v. Smith*, 842 F. App'x 929, 929 (5th Cir. 2021) (per curiam) ("Title VI [does not allow] personal liability claims against individuals").

The plain text of Title VI suffices to foreclose Plaintiffs' arguments that Angieri should be held personally liable under that provision of federal law.  Angieri is not, by himself, a "program or activity"—he is merely employed by one.  Because only "program[s] or activit[ies]" fall within Title VI's reach, Angieri cannot be held personally liable under that provision.  And in any event, even if he could be held personally liable for any Title VI violation, Plaintiffs do not allege that Angieri personally received any federal funding, so Title VI could not apply here.

Finally, the Court briefly notes that contrary to the allegations in their Complaint, Plaintiffs insist in their briefing that Angieri was not merely employed by Arch Grants, but that Arch Grants was merely a "conduit" for funds that were really intended for Angieri personally.  Doc. 28 at 5–6.[1]  The plain text of Title VI aside, two other problems plague that argument.  First, a plaintiff may not amend its pleadings through a memorandum or brief.  *See Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014) (adopting the opinions of other circuits holding that parties cannot amend complaints through briefing).  And second, the argument simply does not square with the facts that Plaintiffs themselves allege—namely, that Arch Grants, as an institution, received its federal funds in April 2020, over one year before Angieri took the job as Executive Director.  *See* doc. 1 at ¶¶ 11, 14, 16.

Because individuals cannot personally be held liable under Title VI, the Court grants Defendants' Motion to Dismiss with respect to Count I as applied to Angieri, and dismisses the claim without prejudice.

> 2. **Title VI as applied to Arch Grants**

To prevail on a Title VI claim, a plaintiff may proceed in either of two ways:  through direct evidence of discrimination, or, in the absence thereof, through circumstantial evidence

---

[1] Note that the Court cites to page numbers as assigned by CM/ECF, not to those provided by the parties.

7

under the *McDonnell Douglas* burden-shifting framework. *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 355 (8th Cir. 2020) (referring to the legal framework outlined by the Supreme Court for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"). The circumstantial-evidence route is based on the four elements of a prima facie discrimination claim: (1) membership in a protected class, (2) the suffering of an adverse action at the hands of the defendant in relation to a federally funded program, (3) qualification to participate in the program, and (4) different treatment from similarly situated counterparts outside the protected class. *See Rowles*, 983 F.3d at 355 (applying the *McDonnell Douglass* test in the context of a Title VI racial discrimination claim). Critically, however, whatever the method under which a plaintiff proceeds, the burden remains upon him to include, in the complaint, "sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (citing *Twombly*, 550 U.S. at 555). The Court will not "conjure up unpled allegations to save a complaint." *Gregory*, 565 F.3d at 473 (citation omitted).

Here, Plaintiffs plead such minimal factual content as to fall short of both the direct- and the circumstantial-evidence standards. First, Plaintiffs do not allege any direct evidence of discrimination, generically noting that "Angieri took a dislike to Plaintiff Null based on race, color, religion, national origin, sex, ancestry, or disability and demonstrated the same by imposing onerous requirements and conditions on Plaintiffs that were not imposed on similarly situated grantees." Doc. 1 at ¶ 16. That allegation communicates nothing about what, exactly, caused Null to believe that Angieri, in his professional capacity, "took a dislike" to him; which of race, color, or national origin served as the basis for that "dislike;" what requirements,

8

conditions, or other burdens Plaintiffs endured; or how those requirements and conditions differ from those that similarly situated counterparts experienced. Nor do Plaintiffs include any of those facts anywhere else in the Complaint. Devoid of additional factual material, the Complaint provides little more than precisely the sort of "threadbare recitals" of the elements of a cause of action rejected by the Supreme Court in *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiffs' "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice to "nudge their claims across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Plaintiffs appear to concede the point on the direct-evidence issue, explaining instead that they need merely plead sufficient facts within the *McDonnell Douglas* framework to survive a motion to dismiss. *See* doc. 28 at 6–7. And to be sure, at the pleading phase, a plaintiff need not plead facts establishing a prima facie case of discrimination, nor does he need to "set forth a detailed evidentiary proffer in a complaint." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (citation omitted). But still, "[t]he allegations in a complaint must give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglass*." *Id.* (citation and internal quotation marks omitted) (emphasis removed). The elements of that test "are part of the background against which a plausibility determination should be made," and "may be used as a prism to shed light upon the plausibility of the claim." *Id.* (citation and internal quotation marks omitted). "Through this prism, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Id.* (citation and internal quotation marks omitted) (emphasis removed); *see also Ingram v. Ark. Dep't of Corr.*, No. 23-1413, 2024 WL 296398 (8th Cir. Jan. 26, 2024) (finding complaint

9

deficient because of its failure to plead sufficient facts through the prism of the *McDonnell-Douglas* elements).

Even under this "reduced" standard, *Warmington*, 998 F.3d at 796, Plaintiffs' sparse factual allegations fall short of providing plausible support for a claim of racial discrimination. To be sure, Plaintiffs do ostensibly satisfy the first element of the framework: it requires that a plaintiff belong to a protected class, *Rowles*, 983 F.3d at 355, and Plaintiffs do allege that "Null is not a white citizen." Doc. 1 at ¶ 6. But using the remaining *McDonnell Douglass* elements as the "background" for a plausibility analysis, the Complaint's factual allegations are far too few and conclusory to sustain a Title VI claim. For instance, consider the second element: whether Plaintiffs suffered an adverse action at the hands of Defendants in relation to the federally funded program. *See Rowles*, 983 F.3d at 355. Plaintiffs assert that Arch Grants "impos[ed] onerous requirements and conditions" and prevented Plaintiffs from "participat[ing] in all of the benefits of the Arch Partners' [sic] program(s)," *id.* at ¶ 16, but those allegations fall well short of the plausibility pleading standard outlined in *Iqbal* and *Twombly*. They say nothing about what requirements and conditions, exactly, Plaintiffs endured; why Plaintiffs found those requirements and conditions "onerous;" what programs Defendants prevented Plaintiffs from enjoying; or what benefits Plaintiffs did not receive.

Later in the Complaint—two counts later, where Plaintiffs allege a breach of the covenant of good faith and fair dealing—Plaintiffs raise, for the first time, a different adverse action that might conceivably address the second element of the framework: that "Defendants terminated the Agreement and the grant [and] demanded the return of any grant money provided." *Id.* at ¶ 31. Even assuming, on a liberal construction of the complaint, that such an allegation provides

10

"fair notice of . . . the grounds upon which [the Title VI claim] rests," *Huggins*, 592 F.3d at 862, the remaining elements of the *McDonnell* framework have little plausible support at all.

The third element considers Plaintiffs' qualification to participate in the program, *see Rowles*, 983 F.3d at 355, but Plaintiffs do not allege sufficient facts regarding qualification. To be sure, Arch Grants' mere tendering of a contract (the Grant Agreement) to Plaintiffs might suggest that Arch Grants found Plaintiffs qualified to participate in its program. More likely, however, is that the contract provided the conditions of Plaintiffs' participation—making Plaintiffs' qualification to continue participating in the program contingent on their meeting the conditions of that contract. But neither party has provided the Court with a copy of the Agreement, and plaintiffs provide no more than minimal details of its contents. The closest they come to a factual allegation on that score is to claim that "Erkios relocated its headquarters and/or significant operations to the City of St. Louis and performed and/or complied with such other material contractual commitments pursuant to the Agreement." *Id.* at ¶ 15. Without further factual allegations about the terms and material responsibilities imposed by the Agreement, the claim that Erkios "performed and/or complied" with the Agreement is precisely the sort of conclusory statement that the Supreme Court has explained will not suffice. *See Iqbal*, 556 U.S. at 678. And without sufficient facts providing "plausible support" for the notion that Plaintiffs complied with the Grant Agreement, *Warmington*, 998 F.3d at 796, plausible support does not exist for the notion that Plaintiffs were qualified to participate in the very program for which the Agreement apparently provides.

Perhaps most important, however, is the lack of factual information supporting the fourth element: different treatment from similarly situated counterparts outside the protected class. *Rowles*, 983 F.3d at 355. Plaintiffs plead no factual information giving plausible support to the

11

inference that they were treated differently from similarly situated counterparts outside of Plaintiffs' protected class.  Plaintiffs do not point to a single counterpart—whether inside or outside of their protected class—that Arch Grants treated differently than Plaintiffs despite being similarly situated and in equal compliance with a comparable grant agreement.  The Complaint makes no allegation at all regarding any person or entity other than the parties themselves, making it impossible to draw any sort of inference of discrimination by comparison to some other Arch Grants program participant.  Instead, Plaintiffs only make two conclusory references to "similarly situated grantees" and "similarly situated participants."  Doc. 1 at ¶ 16.  On such threadbare facts, Plaintiffs' claim that they "have been intentionally discriminated against by Defendant Arch Partners based on Null's race, color and/or national origin," *id.* at ¶ 18, is a legal conclusion entitled to no presumption of truth on a motion to dismiss.  *See Twombly*, 550 U.S. at 555.

The Complaint's sheer dearth of factual material leaves Plaintiffs' claims, though conceivable, far from plausibility.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  Even drawing all reasonable inferences in Plaintiffs' favor, the Court cannot find "plausible support" for a claim to relief under Title VI.  *Warmington*, 998 F.3d at 796.  Accordingly, the Court dismisses, without prejudice, Count I as against Arch Grants.

> **B.**     **The remaining state-law claims**

When a federal district court has subject-matter jurisdiction to hear a claim, it may, of course, exercise supplemental jurisdiction "over all other claims that are so related . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  But when a district court dismisses or otherwise resolves the claims supplying its original jurisdiction, the court need not address the remaining claims—i.e., those disputes which, but for supplemental jurisdiction, the

district court would not have jurisdiction to adjudicate.  Section 1367 explicitly permits courts to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  § 1367(c)(3).  In that context, the Eighth Circuit has advised that when all federal claims are "eliminated before trial," such factors as judicial economy, convenience, fairness, and comity "point toward declining to exercise jurisdiction over the remaining state-law claims."  *Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018).  Accordingly, having dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over the state-law claims.

### C.     Amending the Complaint

Finally, Plaintiffs conclude their brief by "request[ing]," "[i]n the alternative and in the event that the [C]ourt identifies any deficiency in the complaint," "the opportunity to amend [the] complaint to allege further and additional facts."  Doc. 28 at 9–10.  However, Rule 7(b)(1) requires parties to request court orders by a written motion, "state with particularity the grounds for seeking the order," and "state the relief sought."  Fed. R. Civ. P. 7(b)(1)(A)–(C).  Further, "[c]ourts do not construe a request for leave to amend in a brief as a proper motion for leave to amend."  *Thyssenkrup Elevator Corp. v. Harlan Co.*, No. 18-cv-02100-SRC, 2021 WL 2476475, at *8 (E.D. Mo. June 17, 2021) (citing *Wolgin v. Simon*, 722 F.2d 389, 394 (8th Cir. 1983)).  The Court therefore cannot, and does not, "rule on the question of amendment."  *See Wolgin*, 722 F.2d at 394.

### IV.    Conclusion

The Court dismisses, without prejudice, Count I as against Angieri and as against Arch Grants.  Having disposed of those claims subject to its original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims against either defendant.

Accordingly, the Court dismisses Counts II and III without prejudice, and denies Defendants' Motion as to Counts II and III as moot.

So ordered this 9th day of February 2024.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE